UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WYNDHAM HOTEL GROUP CANADA, ULC** and **SUPER 8 WORLDWIDE, INC.**,<br><br>      **Plaintiffs,**<br><br>    v.<br><br>**BRIAN OSTRANDER,**<br><br>      **Defendant.** | Civ. No. 21-16333 (KM)(MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  This matter comes before the Court on a motion for default judgment by plaintiffs Wyndham Hotel Group Canada, ULC ("WHGC") and Super 8 Worldwide, Inc. ("S8WI"). (DE 14.)[1] Plaintiffs commenced this action for breach of a franchise agreement regarding the operation of a guest lodging facility in Canada. (Compl. ¶¶11, 28-29). The defendant, Brian Ostrander, is named as a principal of the corporate franchisee and as a guarantor of the franchisee's obligations under the agreement. In light of Ostrander's failure to answer or otherwise respond to the complaint, the Clerk of the Court entered default as to him. (DE 14.)

  In considering the plaintiffs' motion for default judgment, the Court examined its subject-matter jurisdiction *sua sponte,* as is its obligation. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

---

[1]  Certain key items from the record will be abbreviated as follows:

 DE = Docket entry number in this case

 Compl. = Complaint (DE 1)

 Mot. = Plaintiffs' brief in support of its motion for default judgment (DE 14)

 OSC Resp. = Plaintiffs' response to the order to show cause (DE 18)

1

subject-matter jurisdiction, the court must dismiss the action."). *See also The Prudential Ins. Co. of Am. v. Bramlett*, No. CIV.A. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010) ("Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties."). Noting an unusual configuration of the parties' citizenships, I issued an order directing the plaintiffs to show cause in writing why the action should not be dismissed for lack of jurisdiction. (DE 15.) Because it appears, upon consideration of the plaintiffs' response to the order to show cause, that subject-matter jurisdiction is not established, the case must be dismissed. The motion for default judgment is therefore **DENIED** without prejudice.

## I.   Background

To summarize briefly, the complaint alleges that WHGC, a subsidiary of Wyndham Hotel Group, LLC is itself a subsidiary of Wyndham Hotels & Resorts, Inc. WHGC is authorized by an affiliate, S8WI, to grant franchises in Canada to independent, third-party franchisees to own and operate guest lodging facilities using the Super 8® System and the Super 8® marks. (Compl. ¶¶1-5.) WHGC entered into one such franchise agreement with a Canadian corporation, 1885731 Alberta Ltd., on June 23, 2015. (*Id.* at ¶¶6-11.)

Defendant Ostrander is alleged to be a principal of 1885731 Alberta Ltd. (*Id.* at ¶7.) As such, Ostrander provided WHGC with a guarantee of the corporation's obligations under the agreement. (*Id.* at ¶¶7, 22.) Plaintiffs allege that 1885731 Alberta Ltd. violated the terms of the agreement in November 2019 by unilaterally terminating it and failing to pay the required liquidated damages and outstanding fees. (*Id.* at ¶¶25-26.)

The complaint, filed in August 2021, states that this Court has subject-matter jurisdiction over the action by virtue of the federal diversity jurisdiction statute, 28 U.S.C. § 1332. (Compl. ¶8.) Pursuant to § 1332(a), district courts have jurisdiction over all civil actions wherein the matter in controversy exceeds $75,000 and is between "(1) citizens of different States; (2) citizens of a

2

State and citizens or subjects of a foreign state . . . (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States."

The complaint states the following about the citizenship of the parties: Plaintiff WHGC is "an unlimited liability corporation organized and existing under the laws of the Province of Nova Scotia," with its principal place of business in New Jersey; plaintiff S8WI is a South Dakota corporation with a principal place of business also in New Jersey; and defendant Ostrander is a Canadian citizen living in Alberta, Canada. (*Id.* at ¶¶1, 4, 7.)

In their response to the order to show cause, the plaintiffs specify that the Court's jurisdiction arises under 28 U.S.C. § 1332(a)(2), because the lawsuit is between "citizens of a State and citizens or subjects of a foreign state." (OSC Resp. 2.) They state that WHGC is a citizen of both Canada and New Jersey, but argue that, for purposes of diversity jurisdiction, only its U.S. citizenship is recognized. (*Id.*) Because the lone defendant, Ostrander, is a citizen of Canada, and S8WI is a citizen of South Dakota and New Jersey, the plaintiffs maintain that this case is brought by two corporations, who are citizens of the United States, against a foreign individual. (*Id.*) Thus, the argument runs, there is complete diversity between the parties, and the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). I disagree for the reasons set forth below.

II.     **Discussion**

Section 1332(a)(2) requires "complete diversity," meaning that all plaintiffs in an action must be diverse from all defendants. *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997). Here, it is apparent that Ostrander is a "citizen . . . of a foreign state" and S8WI is a corporate "citizen[ ] of a State" of the United States. So set that aside; there is diversity between those two parties. The critical issue is whether there is diversity between defendant Ostrander and plaintiff WHGC.

3

Determining WHGC's citizenship is made somewhat difficult by the fact that it is an unlimited liability corporation ("ULC")—a business structure that exists only in Canada, and indeed only in three of its provinces (one being Alberta). A ULC is an entity incorporated in the usual manner, possessing the formal characteristics of an ordinary corporation. Its shareholders nevertheless have unlimited liability for any liability, act or default of the unlimited liability corporation. *See* Alberta Business Corporations Act Part 2.1, "Special Rules Respecting Unlimited Liability Corporations," *available at* https://kings-printer.alberta.ca/1266.cfm?page=B09.cfm&leg_type=Acts&isbncln=9780779746811&display=html (visited Oct. 31, 2022); Thomson Reuters, Practical Law, Glossary, *Unlimited Liability Company (ULC)*, https://ca.practicallaw.thomsonreuters.com/w-015-1588?transitionType=Default&contextData=(sc.Default)&firstPage=true (visited Oct. 28, 2022); Investopedia, Business, Types of Corporations, *Unlimited Liability Corporation (ULC)*, https://www.investopedia.com/terms/u/ulc.asp (visited Oct. 28, 2022). It appears, then, that a ULC shares some of the characteristics of a partnership and a corporation under U.S. law.

Partnerships and corporations receive disparate treatment in the federal jurisdictional analysis. A corporation is a citizen both of the state (or foreign state) where it is incorporated and of the state (or foreign state) where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Corporations, including foreign-based or foreign-chartered corporations, are thus considered dual citizens if their place of incorporation and principal place of business differ. *See Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, No. CV 18-6118, 2018 WL 3062910, at *3 (D.N.J. June 20, 2018) (corporate citizenship provision of 28 U.S.C. § 1332(c)(1) applies to foreign corporations).

Unlike corporations, partnerships and other unincorporated entities are not considered "citizens" in their own right; diversity is analyzed according to the citizenship of such an entity's constituent members. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d. Cir. 2008). Thus the Supreme Court has

4

consistently stated that "courts are to look at the citizenship of all the partners (or members of other unincorporated associations) to determine whether the federal district court has diversity jurisdiction." *Id.*, citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 n.1 (2005). Thus, in the case of a partnership, diversity jurisdiction exists only where *all* partners are diverse from *all* parties on the opposing side. *Swiger, supra* at 183.

A ULC is an incorporated entity under the law of Alberta, a jurisdiction that shares the Anglo-American legal tradition. The law of diversity jurisdiction has drawn a bright line between incorporated and unincorporated entities in the United States, and that formalistic approach makes sense in relation to a ULC. If nothing else, it has the virtue of predictability and consistency. While the hybrid structure of a ULC entity gives me pause, I observe that alienage diversity jurisdiction also rests on the balancing of policy considerations, some of them unrelated to the liability, or not, of an entity's members. *See* pp. 6–7, *infra*.

Jurisdiction, of course, does not arise by estoppel. I nevertheless observe that the plaintiffs themselves presume that WHGC will be treated as a corporation for jurisdictional purposes; in keeping with the diversity rules for corporations, they allege that WHGC is a citizen both of both Canada, where it is incorporated, and of New Jersey, its principal place of business. (OSC Resp. 2.) Accordingly, I will make the plaintiff-favorable assumption that WHGC would be treated as a corporation for purposes of diversity jurisdiction.[2] That is, I deem WHGC to be a citizen of both Canada and New Jersey.

The consequences of that treatment are not immediately obvious. I turn to the issue of whether, as a matter of law, there is diversity between a

---

2  Plaintiffs have failed to allege, even generally, the identities or citizenship of WHGC's shareholders or members. Thus, if WHGC were treated as being analogous to a partnership, it would be necessary to dismiss the complaint, on a facial jurisdictional attack, for failure to allege diversity of citizenship. *See generally Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015) (adequacy of allegations of diversity on facial challenge).

Canadian individual (Ostrander) and a corporation that is a citizen of both Canada and the U.S. (WHGC).

That Ostrander and WHGC are both citizens of the same foreign country (or for that matter different foreign countries), standing alone, is of no matter. "When there are alien parties on both sides of the controversy [diversity] will be found lacking even though they are citizens of different foreign countries." *K & H Bus. Consultants Ltd. v. Cheltonian, Ltd.*, 567 F. Supp. 420, 423 (D.N.J. 1983). The question here is whether WHGC should be treated as an "alien party," thus spoiling diversity, or whether, by virtue of its dual U.S. citizenship, WHGC should be regarded as a New Jersey corporation and therefore diverse from Ostrander.

The plaintiffs point to two Third Circuit decisions to support their argument that diversity exists here. In *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008), the Third Circuit held that, for purposes of diversity jurisdiction under § 1332, only the American citizenship of a dual citizen is recognized. In so holding, the Court found persuasive the Fifth Circuit's reasoning in *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) that, in the case of an individual, "the dual citizen should not be allowed to invoke alienage jurisdiction because this would give him an advantage not enjoyed by native-born American citizens." *Frett-Smith, supra* (internal quotation marks omitted). Moreover, the Fifth Circuit observed, permitting diversity jurisdiction in such a case would not serve the "major purpose of alienage jurisdiction," which is "to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level" and to "allow foreign subjects to avoid real or perceived bias in the state courts." *Id.* (Internal quotation marks omitted.)

Plaintiffs acknowledge that the *Frett-Smith* holding, limited to the dual citizenship of an individual, is not precisely on point. They urge, however, that the dual citizenship of an incorporated or collective entity should be treated in the same manner: *i.e.,* that, for diversity purposes, the entity's foreign

6

citizenship should be disregarded, and only its U.S. state citizenship should be considered. In that regard, they cite *Swiger, supra.* There, the Third Circuit expanded the holding of *Frett-Smith* to partnerships and other unincorporated associations. 540 3d. at 185. Specifically, it held that only the U.S. citizenship of a dual-citizen member of an unincorporated association is recognized for purposes of diversity jurisdiction under § 1332(a)(2). *Id.*

*Swiger,* however, does not get the plaintiffs all the way to their desired destination. WHGC is not a partnership or other unincorporated association, but an incorporated entity. The Third Circuit has not extended the holdings of *Frett-Smith* and *Swiger* to incorporated entities, and it is doubtful that it would do so if called upon to consider the issue.

Multiple circuit courts have held, with respect to § 1332(a)(2), that "even if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity is nonetheless defeated if another alien party is present on the other side of the litigation." *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989). *See Slavchev v. Royal Caribbean Cruises, Ltd.,* 559 F.3d 251, 254–55 (4th Cir. 2009); *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1152 (5th Cir. 1985); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 509 F.3d 271, 272–73 (6th Cir. 2007); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990–91 (9th Cir. 1994). In other words, both the foreign and domestic components of a party's dual citizenship will be considered. This makes good sense; a party should not be entitled to "pick and choose among the places of citizenship ignoring one or more in an effort to preserve diversity jurisdiction." *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985).

An individual's citizenship—whether in his or her own right, or as a member of an unincorporated entity—is, so to speak, tethered to physical reality. The state of an individual's citizenship is that individual's domicile: the person's "true, fixed and permanent home and place of habitation." *McCann v.*

7

*Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir.2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 93 S. Ct. 2230 (1973)). Thus an individual must physically move and put down roots in a new location to establish citizenship. *See McCann*, 458 F.3d at 286 (to change domicile, an individual must "take up residence at the new domicile") (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972)). Not so with a corporation, whose citizenship partakes more of legal fiction.

The difference between corporations and individuals, then—and part of why they receive disparate treatment under the federal diversity statute—is that a corporation can obtain citizenship anywhere simply by incorporating there. Recognizing this, Congress amended the diversity statute in 1958 to adopt the corporate citizenship provision in § 1332(c)(1), thereby "eliminat[ing] a loophole that permitted otherwise local businesses to gain access to a federal forum by incorporating in another State." *Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 527 (D.N.J. 2009), citing S. Rep. No. 85-1830 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3099, 3101-02. That, in Congress's view, was stretching the corporate fiction too far.[3] For the same reason that domestic corporations are not permitted to select among their U.S. state citizenships in order to preserve or defeat diversity, foreign corporations are not permitted to engineer their U.S. and foreign citizenships to preserve or defeat diversity under § 1332(a)(2).

Another court in this district has analyzed the effect of a foreign corporation's dual citizenship under 28 U.S.C. § 1332(a)(3), which confers diversity jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." In *Caribbean Telecommunications*, the plaintiff was incorporated in Guyana with a

---

[3]   To be sure, this all begins to seem a bit arbitrary. *See generally Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014–15 (2016) (describing as "metaphysical" the rule that "[w]hile humans and corporations can assert their own citizenship, other entities take the citizenship of their members"). Still, lines must be drawn, and the line that has been drawn in the case law is between incorporated and unincorporated entities.

8

principal place of business in New Jersey, while the defendants were (a) a Guyana-based and -chartered corporation, and (b) a Delaware corporation with its principal place of business in Massachusetts. 594 F. Supp. 2d at 524. Diversity clearly would have existed as between a pure New Jersey plaintiff and defendant (b), the Delaware/Massachusetts defendant. The court concluded, however, that the plaintiff's dual foreign citizenship could not be disregarded. The predicate case between citizens of different states was lacking; this was a case between a plaintiff which was a foreign citizen (albeit in addition to being a citizen of a U.S. state) and a U.S. citizen defendant. For that reason, the § 1332(a)(3) configuration was not present, and the additional presence of defendant (a), a foreign citizen, did not matter.

In line with *Caribbean Telecommunications* and the numerous other Court of Appeals cases to have considered this issue, I conclude that plaintiffs and Ostrander are not diverse parties. The diversity analysis under § 1332(a)(2) must consider *both* of WHGC's citizenships—its foreign citizenship and its New Jersey citizenship. Considered as a New Jersey citizen, WHGC is diverse from Ostrander. But considered also as a foreign citizen, as it must be, WHGC, like Ostrander, is an "alien party." Diversity does not exist between two "alien parties." *See K & H Bus. Consultants*, 567 F. Supp. at 423.

Furthermore, allowing WHGC to sue in federal court does not serve the "major purposes of alienage jurisdiction," as WHGC has no particular need of a national forum for its state law claims and is not subject to "real or perceived bias" in state court. S*ee Frett-Smith*, 511 F.3d at 396. To the contrary, WHGC does business in New Jersey, and the target of any such bias would likely be defendant Ostrander, as he is solely a foreign citizen.

A final consideration: In some circumstances, and by some means, a nondiverse "spoiler" can be dismissed or otherwise disposed of, and diversity thereby achieved. *See Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830, 109 S. Ct. 2218, 2222, 104 L. Ed. 2d 893 (1989) (permitting dismissal on appeal, noting cumbersome alternative of remand, dismissal, and likely refiling

of complaint without naming the nondiverse party); *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 130 (3d Cir. 2022) (dismissal of nondiverse party added after diversity-based removal). That stratagem would be fruitless here, because there is only one defendant, and WHGC, the nondiverse plaintiff, is an indispensable party under Fed. R. Civ. P. 19. *See Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (diversity cannot be achieved by dismissing indispensable party). "It is well-established that a contracting party is the paradigm of an indispensable party." *Caribbean Telecommunications*, 594 F. Supp. 2d at 532. "Courts have consistently found that all parties to a contract must be joined to provide full relief and prevent piecemeal or repetitive litigation." *Seashore Asphalt Corp. v. Pigliacelli*, No. CV 21-11920, 2022 WL 248102, at *3 (D.N.J. Jan. 27, 2022).

Here, WHGC is the only party on the franchisor side of this franchise agreement. If WHGC were dismissed from the case, S8WI could not maintain this action for breach as plaintiff. Accordingly, I conclude that WHGC is an indispensable party, and could not be dismissed without destroying the substantive basis for the lawsuit. The Court thus lacks subject-matter jurisdiction over this action and will dismiss the case in its entirety. *See Caribbean Telecommunications*, 594 F. Supp. 2d at 532 (dismissing case where nondiverse party, as a contracting party, was indispensable).

### III. Conclusion

Because the Court lacks subject-matter jurisdiction over the case, the motion for default judgment is **DENIED** and the case is dismissed without prejudice. An appropriate order will issue.

Dated: October 31, 2022

/s/ Kevin McNulty
_____
**KEVIN MCNULTY**
**United States District Judge**